**LEBANON VALLEY RADIO, INC.,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Lebanon Broadcasting Company, Intervenor.**

No. 73–1356.

United States Court of Appeals, District of Columbia Circuit.

Argued April 23, 1974.
Decided Sept. 13, 1974.

Edwards, Circuit Judge, dissented and filed opinion.

Theodore Baron, Washington, D. C., for appellant.

Daniel M. Armstrong, Counsel, Federal Communications Commission, with whom John W. Pettit, Gen. Counsel, at the time the brief was filed, Joseph A. Marino, Associate Gen. Counsel, Federal Communications Commission, were on the brief, for appellee. Philip V. Permut, Counsel, Federal Communications Commission also entered an appearance for appellee.

William M. Barnard, Washington, D. C., with whom Arthur H. Schroeder, Washington, D. C., was on the brief, for intervenor.

Before EDWARDS,* United States Circuit Judge for the Sixth Circuit, and TAMM and WILKEY, Circuit Judges.

TAMM, Circuit Judge:

This case is before the court on appeal from an order of the Federal Communications Commission ("Commission") denying review of a decision of the Commission's Review Board ("Board") which denied the application of Lebanon Valley Radio, Inc. ("Lebanon Valley") for a construction permit for a new broadcast station. Finding the Commission's action erroneous, we reverse.

I

The protracted administrative history of this case began in March, 1965 when hearings were commenced on Lebanon Valley's application. The hearings were conducted on various dates until February, 1968 when the record was closed. Thereafter, on February 26, 1969, Hearing Examiner Irion released his Initial Decision, in which he concluded that Lebanon Valley was financially and technically qualified, and accordingly, recommended a grant of Lebanon Valley's application.[1] However, shortly after that decision, the Board granted a petition, filed January 17, 1969 by Radio Cantonsville, Inc., a competitor of Leba-

1. Lebanon Valley Radio, Inc., 35 FCC2d 272 (1969) ; Joint Appendix at 3 (hereinafter J.A.).

non Valley, to enlarge the issues in the Lebanon Valley proceeding. Lebanon Valley Radio, Inc., 16 FCC2d 937 (1969). Radio Cantonsville had alleged, *inter alia,* that Lebanon Valley no longer intended to construct its proposed station on its initially specified site, and in fact, had purchased a different site while allowing its option on the initial site to expire. Lebanon Valley maintained, to the contrary, that it fully intended to utilize the initially specified site for its transmitter and, while its original option on that site may have expired on January 11, 1969, it had, in any event, obtained a valid one-year extension of that option on January 22, 1969.

Although the assertions of both parties were conflicting, the Board noted that: "If, as [Radio Cantonsville] contends, the land purchased by [Lebanon] Valley's principals is to be utilized as a site for its proposed station, and its presently specified site is to be abandoned, [Lebanon] Valley's failure to inform the Commission of these developments could reflect adversely on its qualifications to be a Commission licensee." *Id.* at 938. The Board found that Radio Cantonsville's allegations also raised the following additional issues which warranted further inquiry:

> First, there is now considerable doubt as to whether [Lebanon] Valley actually proposes to construct its transmitter at the site specified in its application. Second, the allegations of the owner of the site that he was badgered and harassed into extending [Lebanon] Valley's option and that he was assured that a radio tower would not be placed on his land during the 1-year period of the extension raise a question of whether the proposed transmitter site is still available. Finally, the affidavits relied on by petitioner in its reply conflict, in all material respects, with assertions in [Lebanon] Valley's opposition.

*Id.* at 939 (footnote omitted). For the above reasons, the Board found that "a substantial question is presented concerning [Lebanon Valley's] conduct and whether it has engaged in misrepresentation or conduct lacking in candor in its dealings with the Commission." *Id.* Thus, the proceeding was remanded to the hearing examiner for resolution of the following issues:

(1) To determine whether the transmitter site proposed by Lebanon Valley Radio, Inc., is still available for the effectuation of its proposal.

(2) To determine whether Lebanon Valley Radio, Inc., proposes to construct a broadcast transmitter on the site proposed in its application.

(3) To determine whether Lebanon Valley Radio, Inc., failed to amend or attempt to amend its application within 30 days after substantial changes were made, as required by section 1.65 of the Commission's rules, and, if so, the effect on its qualifications to be a Commission licensee.

(4) To determine, in light of the evidence adduced under issues (1), (2), and (3) above, whether Lebanon Valley Radio, Inc., has engaged in misrepresentation or conduct lacking in candor in its dealings with the Commission and, if so, the effect on its qualifications to be a Commission licensee . . . .

*Id.* at 939–40.

On remand, Hearing Examiner French ordered that Lebanon Valley's application be denied on the grounds that: "(1) Lebanon Valley has not established that its transmitter site is still available, and (2) in its dealings with the Commission Lebanon Valley has engaged in misrepresentations and conduct lacking in candor." Lebanon Valley Radio, Inc., FCC Docket No. 15835 at 19 (issued April 30, 1970), J.A. at 61. These ultimate conclusions were premised upon Examiner French's disposition of the remand issues. Issue one, site availability, was resolved against Lebanon Valley on a finding that the one-year option extension was acquired by misrepresentation and thus, Lebanon Valley would probably not prevail if it attempted to exercise the option. Conse-

quently, Examiner French concluded that Lebanon Valley failed to establish that the site was still available. Whether Lebanon Valley still proposed to construct its transmitter on the site, issue two, was deemed moot in light of the disposition of issue one. As to issue three, whether Lebanon Valley failed to comply with certain Commission rules, Examiner French found in favor of Lebanon Valley because there was no record evidence that Lebanon Valley intended to change its site and thus, no necessity for Lebanon Valley to amend its application. Issue four, whether Lebanon Valley made misrepresentations or engaged in conduct lacking in candor in its dealings with the Commission, was resolved against Lebanon Valley. The examiner concluded that Lebanon Valley had misrepresented to the Commission that it had obtained a valid one-year extension of its option, that much of the testimony of Lebanon Valley's principals was evasive and lacked candor and, that the one-year extension was obtained by misrepresentation and deceit, which the Commission could not condone.

Lebanon Valley filed exceptions to Examiner French's decision and also petitioned the Board to reopen the record to reflect a June 22, 1970 decision of the Court of Common Pleas of Lebanon County, Pennsylvania, which decreed specific performance on Lebanon Valley's one-year option agreement. After that decision was affirmed on October 15, 1970 by the Pennsylvania court, *en banc*,[2] Lebanon Valley again petitioned the Board to reopen the record to reflect that action. The Pennsylvania court's decisions and their relevance to the case *sub judice* will be more fully discussed *infra*.

On June 7, 1972, the Board, with one member vehemently dissenting, denied Lebanon Valley's application on the sole ground that Lebanon Valley had misrepresented and engaged in conduct lacking in candor in its dealings with the Com-

mission. Lebanon Valley Radio, Inc., 35 FCC2d 243 (1972), J.A. at 2. Although the Board did grant Lebanon Valley's petitions to reopen the record to reflect the Pennsylvania court's decisions, which in the Board's own words "conclusively resolved the question of the legal validity of the option extension . . .",[3] and necessitated that issue one be resolved in favor of Lebanon Valley, it nevertheless held that issue four must be resolved against Lebanon Valley and accordingly, affirmed Examiner French's denial of Lebanon Valley's application. *Id*. The Board specifically cited a few instances of allegedly inconsistent testimony by Lebanon Valley's principals in support of Examiner French's credibility findings. These instances, the Board asserted, fell "far short of the standard of integrity and truthfulness expected by the Commission from prospective licensees." *Id*. at 260, J.A. at 25. Moreover, the Board held that its conclusion that testimony of Lebanon Valley's principals "was unworthy of belief and manifestly designed to mislead the Commission is fully sustained by the record in this proceeding." *Id*. The Board concluded that the Pennsylvania court decisions, while dispositive of issue one, were irrelevant to issue four because they were merely rulings as a matter of law made without credibility findings and concerned issues and testimony not before the Commission. On March 6, 1973, the Commission ordered that Lebanon Valley's application for review of the Board's order be denied. Lebanon Valley Radio, Inc., FCC Docket No. 15835 (adopted March 2, 1973), J.A. at 1.

We think the absence of substantial supportive record evidence compounded by an unreasonably myopic analysis of the Pennsylvania court's opinions, is fatal to the Board's decision. Consequently, the Commission's denial of Lebanon Valley's petition for review of that decision must be reversed.

---

2. Lebanon Valley Radio, Inc. v. Martin, Equity No. 14 (October 15, 1970) (*en banc*), J. A. at 74.

3. Lebanon Valley Radio, Inc., 35 FCC2d 243, 259 (1972), J.A. at 23.

## II

The Communications Act of 1934, as amended, not only allows, but unequivocally requires the Commission to consider an applicant's character. 47 U.S.C. § 308(b) (1970). Furthermore, it is axiomatic that an applicant's misrepresentations to the Commission, indubitably a reflection on one's character, can result in the applicant's disqualification, which, *if reasonable*, will not be disturbed by the courts. FCC v. WOKO, Inc., 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); WEBR, Inc. v. FCC, 136 U.S.App.D.C. 316, 420 F.2d 158 (1969); Crowder v. FCC, 130 U.S.App.D.C. 198, 399 F.2d 569, cert. denied, 393 U.S. 962, 89 S.Ct. 400, 21 L.Ed.2d 375 (1968); Lorain Journal Co. v. FCC, 122 U.S. App.D.C. 127, 351 F.2d 824 (1965), cert. denied sub nom., WWIZ, Inc. v. FCC, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966); Charles P. B. Pinson, Inc. v. FCC, 116 U.S.App.D.C. 106, 321 F.2d 372 (1963). Thus, the Commission contends that the Board's decision "against Lebanon Valley is not arbitrary or capricious, that it is supported by substantial evidence and should therefore be affirmed." Appellee's Br. at 18. Ostensibly, the Commission's argument is premised upon the significant deference due Examiner French's credibility determinations.[4] While we agree that an examiner's credibility determinations are entitled to significant weight, we do not find them controlling in this case; nor do we find other substantial evidence warranting affirmance of the Board's decision.

The Board found that "the conduct of Lebanon Valley's principals at the hearing [failed] to meet the standard of integrity and truthfulness expected by the Commission from its licencees and [potential] licencees." Lebanon Valley Radio, Inc., *supra*, 35 FCC2d at 258–59, J.A. at 23. In support of this conclusion, the Board cited Lebanon Valley's principals' allegedly untruthful account of a meeting between them and the then owners of the site in question, a meeting which resulted in the one-year option extension. The "untruthfulness" of Lebanon Valley's principals was substantiated with reference to their allegedly inconsistent statements and Examiner French's credibility findings, which, based on conduct, demeanor and manner of testifying, ultimately held the owners of the site to be more believable than Lebanon Valley's principals. As previously mentioned, the Pennsylvania court's decisions were simply disregarded as irrelevant to issue four.

We, however, think the Pennsylvania court's decisions are relevant. The decisions resolved an action for specific performance on the option agreement brought by Lebanon Valley against the then owners of the site in question, the Martins. The Martins asserted that the option could not be enforced because they were harrassed and pressured into signing it and false representations were made to them as to what would be erected on the land. *Id.* at 265, J.A. at 33 (Board Member Nelson, dissenting). Notably, the Martins' defense was also the substance of their testimony before the Commission, testimony that Examiner French found more believable than Lebanon Valley's principals' testimony. Finding that " '[t]here was no harrassment on the part of plaintiff's [Lebanon Valley's] officers . . . [and] no fraud or mistake in procurement of the extension of the option,' " *id.* at 265–66, J.A. at 34, the court granted the requested specific performance. Subsequently, the court, *en banc*, affirmed this decision, stating, *inter alia*: The evidence leads us to the conclusion that lurking in the shadows is the established radio station which wants to prevent more competition . . . . " Lebanon

---

4. Approaching the issue differently, intervenor argues, *inter alia*, that "[t]here is no paradox in concluding that even though Lebanon Valley now has the site it did not intend that result and misrepresented its true intent to the Commission." Intervenor's Br. at 7. We think this argument not only misconstrues the Board's decision, but also contradicts the evidence of record and defies logic and common sense.

Valley Radio, Inc. v. Martin, Equity No. 14 at 5 (October 15, 1970) (*en banc*), J. A. at 78. We think the Board's failure to take proper notice of the relevance of these decisions was erroneous and unreasonable.

The Board stated that the court did not make "credibility findings." Granted that the court did not make "credibility findings," per se, nevertheless, it did specifically address the harrassment and misrepresentation issues and concluded, based upon sworn testimony, contrary to Examiner French's "credibility findings." For the board to dismiss such findings merely because they are not labelled as "credibility findings" is to exalt form over substance. This we cannot condone.

The Board also supported its decision with reference to various allegedly inconsistent statements of Lebanon Valley's principals. Having dutifully examined those statements, we find the Board's characterization of most of them highly questionable, and the remainder of minor significance overall. Perhaps the few remaining inconsistencies were best explained by the Board's dissenting member when he stated: " 'confusion as to details . . . is not uncommon in the stories of entirely honest witnesses.' " Lebanon Valley Radio, Inc., *supra,* 35 FCC2d at 270, *quoting* NLRB v. Regal Knitwear Co., 140 F.2d 746 (2d Cir. 1944), aff'd, 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945), J.A. at 41.

In sum, although cognizant of the deference due a hearing examiner's credibility findings,[5] we think the instant case presents an extraordinary situation in which substantial questions are raised concerning the validity of the examiner's credibility findings. The Board's resolution of the questions raised is not supported by substantial record evidence, and thus, the Commission's denial of Lebanon Valley's application for review is error. We reverse and remand the case to the Commission for further proceedings consistent with this opinion. We presume the Commission will proceed expeditiously so that this proceeding may reach a final conclusion before it enters its second decade.

Reversed and remanded.

EDWARDS, Circuit Judge (dissenting).

With all respect to the views of my brethren, I feel that reversal means our reevaluation of credibility findings which were made on substantial evidence by the Examiner and the Board. I would affirm.

---

5. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).