In re SANICO, INC., a Kentucky
Corporation, Debtor.

KENTUCKY NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Plaintiff,

v.

SANICO, INC., a Kentucky Corporation, Charles L.J. Freihofer, Trustee and James P. Breslin, Defendants.

Bankruptcy No. 87–00815.
Adv. No. 88–0142.

United States Bankruptcy Court,
E.D. Kentucky,
Covington Division.

Aug. 24, 1988.

Charles T.J. Freihofer, Ft. Mitchell, Ky., trustee.

Charles W. Kurtz, Frankfort, Ky., for Natural Resources and Environmental Protection Cabinet.

Howell Vincent, Covington, Ky., for trustee.

## MEMORANDUM–OPINION/ORDER

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter came on for hearing on April 5, 1988, in Covington, Kentucky, on the motion of plaintiff, Kentucky Natural Resources and Environmental Protection Cabinet, for injunctive relief.

On July 20, 1988, the Cabinet filed its adversary proceeding against the debtor, Sanico, Inc., Charles L.J. Freihofer, Interim Trustee, and James P. Breslin, seeking (a) a mandatory injunction requiring defendants to operate and maintain pumping stations to prevent damage to the environment of the Commonwealth, (b) a determination that the automatic stay does not apply to the Cabinet (c) the allowance of the expense of maintaining the pumping stations as an administrative expense, (d) a prohibition against the Trustee abandoning the sewer system and pumping stations without making provisions for the protection of the environment, and (e) a denial of discharge of any civil penalties imposed against debtor, Sanico, Inc., and James P. Breslin. A motion for injunctive relief was filed on July 21, 1988, alleging that two pumping stations are discharging untreated waste water and raw sewage into the creeks of the Commonwealth, thereby threatening the health, safety and welfare of the citizens of the community. The motion requests that a mandatory injunction be entered requiring the debtor, the Interim Trustee and James P. Breslin to take all actions necessary to operate and maintain the pumping stations, to prevent damage to the Commonwealth and to abate health hazard.

At the hearing, James P. Breslin, even though properly served with the summons, complaint and motion, was not represented by counsel and introduced no evidence.

It was established at the hearing that Sanico, Inc. owned and operated a sewage collection system in Mason County, Kentucky, which serves approximately 111 households. Prior to July, 1987, Sanico collected a monthly charge from each user and paid the City of Maysville for treating the sewage. While all witnesses disclaimed knowledge of the event, the exhibits attached to a motion filed by the Trustee on the date of the hearing indicate that on or about July 2, 1987, Sanico, Inc. executed and delivered to the City of Maysville, a bill of sale of the sewage collection system, as well as its other assets. Apparently, Sanico terminated its charges to the customers at that time. The matter surrounding the ownership of the sewer collection lines is now before the Kentucky Court of Appeals.

It is well established that ownership of property turns upon title. *Placer Coal, Inc. v. Rhondale Coal Services,* Ky. App., 684 S.W.2d 25 (1985). For title to have passed from Sanico, Inc. to the City of Maysville, there must be sufficient evidence to show that the parties mutually agreed on the sale of the lines. In order to have a binding contract for the sale of property, there must be an unqualified offer and acceptance by the parties. 67 Am Jur Sales § 129, *In re Glover Construction Co., Inc.,* 49 B.R. 581 (Bkrtcy.W.D. Ky., 1985). The mere execution and delivery of a bill of sale to the City of Maysville from Sanico, Inc. is not, in and of itself, sufficient proof to show the intentions of the parties to agree on the sale of the lines. Further, the City of Maysville disclaims the acceptance of the bill of sale, and until such time as a court of competent jurisdiction concludes that some entity other than Sanico, Inc. is the owner of the sewer collection

lines, it is the opinion of this Court that the lines are, in fact, owned by Sanico.

■ An abundance of evidence was introduced at the hearing supporting the allegations of the Cabinet that on or about July 30, 1987, and at various times subsequent thereto, the pumping stations were not operable and that raw sewage was being discharged into the creeks of the Commonwealth. This Court has a sympathetic ear and beyond doubt, such discharge should be abated. However, no evidence was introduced to indicate that any assets are available to the Trustee to pay for the necessary repairs, maintenance and operation of the system. Schedule B–2 of the bankruptcy petition of Sanico, Inc. reflects a checking account in the sum of $3.91 and one old copy machine with the value of $25.00. That Schedule also reflects *contingent* claims of $430,178.00, that being the fair market value and losses alleged by Sanico, Inc. in its attempted inverse condemnation action. It is noted that the Mason Circuit Court denied the filing of an amended counterclaim to allege these damages and that litigation is presently in the Court of Appeals of Kentucky. At this point, this contingent claim is highly speculative, and, as indicated, no evidence was introduced to establish that the sewer lines had any value for loan purposes. Indeed, there was no offer by the Cabinet or any other entity to loan money to the Trustee in return for an administrative claim or super priority lien. This Court cannot require the Trustee to expend money, as there are no assets to fund such expenditures.

■ The Cabinet urges this Court to pierce the corporate veil and direct defendant, James P. Breslin, individually, to pay the necessary costs. However, for this Court to hold the defendant personally liable for the debts of the corporation, there must be sufficient proof to show that Breslin committed unauthorized, fraudulent or tortious acts for the benefit of the corporation. *Hagemeyer Chemical Co. v. Insect–O–Lite Co.*, 291 F.2d 696 (6th Cir.1961). Here, the Cabinet failed to introduce evidence to establish liability against Breslin and consequently, the Court does not hold Breslin personally liable for the corporate

debts. Kentucky Civil Rule 65.02 was cited by the Cabinet for the proposition that Breslin could be held personally liable, as officer of the corporation. The Court does not give that construction to Rule 65.02. Generally speaking, Rule 65 sets forth the procedure for obtaining injunctive relief. Subsection 2, which is substantially the same as F.R.C.P. 65(d) states, in pertinent part, that "every restraining order or injunction shall be binding upon the parties to the action, their officers, agents and attorneys...." This section simply does not authorize the Court to direct an officer to pay money owed by a corporation. Rather, the purpose of subsection 2 is simply to define the persons bound by an injunction or restraining order. In *Regal Knitwear Co. v. NLRB*, 1945, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661, the Supreme Court, discussing the origin and impact of Rule 65(d), stated:

> "This rule is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence, it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."

Finally, the Court notes that the occupants of the 111 houses, who are actually causing the pollution by dumping their sewage into the sewer collection lines are not parties to this action, and cannot be. They would, however, be amenable to service in an action in the Mason Circuit Court, which appears to be the best forum for resolving this matter. This Court is aware of the additional time such litigation will entail, however, it can hardly be said that this matter is an emergency since the Cabinet, by its own evidence has shown the pollution to have existed for over a year.

NOW, THEREFORE, the Court being sufficiently advised, does OVERRULE the plaintiff's motion for injunctive relief.